NUMBER
13-00-466-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

_____________________________________________________________________

 

F.F.P. OPERATING PARTNERS,

L.P., D/B/A MR. CUT RATE
#602,

ET AL.,                                                                              Appellants,

 

                                                   v.

 

XAVIER DUENEZ, AND WIFE

IRENE DUENEZ, INDIVIDUALLY,

AND AS NEXT FRIENDS OF A.D.,

C.D., AND P.D., MINORS,                                                   Appellees.

_____________________________________________________________________

 

                   On appeal from the County
Court at Law No. 1 

                                 of Calhoun
County, Texas.

_____________________________________________________________________

 

                                   O P I N I O N

                    Before Justices Dorsey, Yañez, and Rodriguez

                                   Opinion by
Justice Yañez

 

Appellant,
F.F.P. Operating Partners (FFP), appeals a judgment rendered in favor of appellees, Xavier and Ashley Duenez.  We affirm.








Background

In the late
afternoon of July 26, 1997, Roberto Ruiz bought a twelve-pack of beer at a AMr. Cut Rate@ convenience
store owned by FFP.  During the
afternoon, prior to purchasing the twelve-pack at FFP=s store, Ruiz
had drank a case and a half of beer while cutting firewood.  After leaving FFP=s store, Ruiz
swerved into the opposing lane of traffic, colliding with the Duenez family=s car.  All five members of the Duenez
family were injured, with Xavier and his daughter, Ashley, suffering the
greatest injuries.[1]

Ruiz was
arrested at the scene of the accident and ultimately pleaded guilty to
intoxication assault and was sent to prison.[2]  The Duenezes
brought suit against Ruiz, FFP, Carol Solis,[3]
Nu-Way Beverage Company, and the owner of the land
where Ruiz had spent the afternoon cutting firewood and drinking.  Prior to trial, the Duenezes
non-suited the landowner, Ruiz, Nu-Way Beverage
Company, and Carol Solis, leaving  FFP as
the only defendant at trial.








FFP attempted
to have the court=s charge to the
jury include a question apportioning responsibility between Ruiz and FFP;
however, the trial court refused to include such a question.  The jury found that when the alcohol was sold
to Ruiz, it was Aapparent to the
seller that he was obviously intoxicated to the extent that he presented a
clear danger to himself and others,@ and his
intoxication was a proximate cause of the collision.  The trial court rendered judgment for the Duenezes in excess of $35,000,000.00 plus costs and
prejudgment interest. 

FFP raises four
issues on appeal, contending that the trial court erred by: (1) granting a
partial summary judgment in which the trial court held that the Aproportionate
responsibility statute does not apply in a dram shop case when the drunk driver
is not the plaintiff;@ (2) severing a
cross-action filed by FFP against Ruiz for contribution and as a responsible
third party; (3) refusing to submit a question to determine Ruiz=s negligence
and percentage responsibility; and (4) refusing to submit an instruction on
sole proximate cause.

Proportionate
Responsibility and the Dram Shop Act








FFP=s first three
issues all require an examination of the relation of the Dram Shop Act[4]
to the apportionment of liability in a situation where the alcohol provider
seeks to apportion liability between itself and the intoxicated driver.  This requires an examination of the Dram Shop
Act and its relationship to the provisions of the Texas Civil Practice and
Remedies Code governing apportionment of responsibility.

Under the Dram
Shop Act:

providing,
selling, or serving an alcoholic beverage may be made the basis of a statutory
cause of action . . . upon proof that:

 

(1) at the time
the provision occurred it was apparent to the provider that the individual
being sold, served, or provided with an alcoholic beverage was obviously
intoxicated to the extent that he presented a clear danger to himself and
others; and

 

(2) the
intoxication of the recipient of the alcoholic beverage was a proximate cause
of the damages suffered.

 

Tex. Alco. Bev. Code Ann. ' 2.02(b)
(Vernon 1995). 

Chapter 33 of
the Texas Civil Practice and Remedies Code governs the apportionment of
responsibility in tort cases.  Tex. Civ. Prac. & Rem. Code Ann. ' 33.002(a)
(Vernon1997).  Under chapter 33, a
plaintiff Amay not recover
damages if his percentage of responsibility is greater than 50 percent.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 33.001
(Vernon1997).  Chapter 33 also mandates
that, as to each cause of action, the trier of fact
shall determine the percentage of responsibility for the harm for which
recovery of damages is sought of each claimant, each defendant, each settling
person, and each responsible third party who is joined under section
33.004.  Tex. Civ. Prac. & Rem. Code Ann. ' 33.003
(Vernon1997).








The case now
before this Court involves a third-party claim against FFP: the Duenezes sued FFP for damage caused by another
individual.  FFP argues that chapter 33
of the Texas Civil Practice and Remedies Code applies to third-party Dram Shop
claims.  This question has not been addressed
by the Texas Supreme Court; however, the supreme court has addressed the
question of the applicability of the proportionate responsibility statute in first-party
actions, when the plaintiff in the lawsuit is also the intoxicated person.  Smith v. Sewell, 858 S.W.2d 350, 356
(Tex. 1993).  FFP relies on the holding
in Sewell to support its argument that chapter 33 applies to
third-party  Dram Shop Act claims, such
as the case now under consideration.

In Smith v.
Sewell, the plaintiff sued the owner of a bar after the plaintiff became
intoxicated at the bar, then was involved in an auto accident.  Id. at 351.  The trial court granted summary judgment for
the bar owner on the ground that an individual who is provided, sold, or served
alcoholic beverages in violation of the Dram Shop Act, and injures himself may
not assert a cause of action against the provider.  Id. at 352.  The Dallas Court of Appeals reversed the
trial court, holding that the Dram Shop Act allowed first party actions against
providers.  Sewell v. Smith, 819
S.W.2d 565, 568 (Tex. App.BDallas 1991) aff=d, 858 S.W.2d
350 (Tex. 1993).  The Texas Supreme Court
affirmed the decision of the court of appeals. 
Sewell, 858 S.W.2d at 356. 
The plaintiff argued before the supreme court that chapter 33 was Anot applicable
to an intoxicated individual=s recovery
under [the Dram Shop Act].@  Id. at 355.  The supreme court disagreed, holding that Aunder the
limited circumstances present in this cause@ chapter 33 applies to actions brought under
the Dram Shop Act; thus, an intoxicated person suing a provider for his own
injuries under the Dram Shop Act will not be entitled to recover damages if his
percentage of responsibility is greater than fifty percent, and the intoxicated
person=s recovery will
be adjusted according to his own percentage of responsibility.  Id. at 356.  The court stated: 








[the Dram Shop Act] is intended to deter
providers of alcoholic beverages from serving alcoholic beverages to obviously
intoxicated individuals who may potentially inflict serious injury on
themselves and on innocent members of the general public.  But when it is the intoxicated individual
who is injured due to his own intoxication, it is particularly appropriate that
his conduct in contributing to his injury should be considered in assessing the
amount of recovery, if any, to which he is entitled.  Application of the principles of comparative
responsibility to causes of action brought under [the Dram Shop Act]
establishes a consistent and equitable approach to the issue of "dramshop liability" generally, and first party "dramshop liability" specifically.  This approach provides an effective solution
to a difficult and controversial issue. 

 

Id. (emphasis
added).  

In the case now before this Court, the Duenezes
argue that the Dram Shop Act imposes vicarious liability upon providers for the
actions of the intoxicated person in an action filed by a non-negligent third
party.  FFP argues that the holding in Sewell
precludes a finding of vicarious liability and further requires that FFP=s liability be
offset by Ruiz=s
liability.  We hold that, in third-party
actions under the Dram Shop Act in which there are no allegations of negligence
on the part of the plaintiffs, a provider is vicariously liable for the damages
caused by an intoxicated person, and such a provider is not entitled to offset
its liability by that of the intoxicated person.








This holding is
consistent with the wording of the Dram Shop Act.  The conduct by which a provider incurs
liability for damages caused by an intoxicated person is the provision of
alcohol to a person who is obviously intoxicated to the point that he presents
a clear danger to himself or others.  Tex. Alco. Bev. Code Ann. ' 2.02(b)(1)
(Vernon 1995).  The law does not require
that the provider engage in any conduct that results in the actual injuries suffered,
but rather imposes liability on the 
provider for the actions of the intoxicated person.  See Borneman v.
Steak & Ale of Texas, Inc., 22 S.W.3d 411, 413 (Tex. 2000) (considering
acts or omissions, other than the provision of alcohol to intoxicated person,
would directly contravene legislative decision to define dram shop liability in
reference to patron=s
intoxication).  When a provider sells,
serves, or provides an alcoholic beverage to an intoxicated person, that
provider becomes liable for any harm caused by the intoxicated person, as a
result of his intoxication, just as an employer is liable for the damages
caused by an employee in the course and scope of the employment.

Vicarious
liability imposes liability on one party for the actionable conduct of another
party.  St. Anthony=s Hosp. v.
Whitfield,
946 S.W.2d 174, 177 (Tex. App.BAmarillo 1997,
writ denied);  Black=s Law Dictionary 927 (7th ed.
1999).  Under the theory of vicarious
liability, the actionable conduct of a tortfeasor is
deemed to be that of the vicariously liable party.  See, e.g., GTE Southwest, Inc. v.
Bruce, 998 S.W.2d 605, 618 (Tex. 1999)(actions of a corporate officer are
deemed to be the actions of the corporation itself); Dewitt v. Harris County,
904 S.W.2d 650, 654 (Tex. 1995)(respondeat
superior imposes liability on the employer for the acts of his
employee).  Thus, it follows that a
vicariously liable party cannot offset its liability by that of the tortfeasor, because the responsibility of the tortfeasor is imputed to the vicariously liable party.  When a party is vicariously liable for the
conduct of another party, a division of liability would be meaningless: the
vicariously liable party is liable for the other party=s actions, as
though those actions were its own.








Vicarious
liability becomes problematic in first-party lawsuits.  Allowing a tortfeasor
who has been injured as a result of his own intoxication to sue the provider,
and then imposing vicarious liability upon the provider would allow the tortfeasor to recover totally from another party for the tortfeasor=s own
conduct.  The supreme court avoided this
unpalatable result in Sewell by applying the principles of proportionate
responsibility contained in chapter 33.  Sewell,
858 S.W.2d at 356.  However, the court
stressed that this holding was limited to the circumstances of that case.  Id. 
Because the case now before this Court is not a first-party action, it
is not subject to the holding in Smith v. Sewell.[5]  Because the instant case is a third-party
action under the Dram Shop Act, and there are no allegations that the plaintiff
was negligent, FFP is vicariously liable for the damages Ruiz caused, and is
not entitled to offset its liability by Ruiz=s percentage of liability.[6]

The Summary
Judgment








In its first
issue on appeal, FFP argues that the trial court erred in granting the
plaintiffs= motion for
partial summary judgment which was based on the ground that the proportionate
responsibility statute does not apply in a dram shop case when the intoxicated
driver is not the plaintiff.  The sole
argument raised in the Duenezes= motion for
partial summary judgment was that the Dram Shop Act created vicarious liability
for providers when an intoxicated person causes injuries to third parties and
there are no allegations of fault on the part of the third party.  Thus, the Duenezes
contended, chapter 33 was not applicable to their suit against FFP.  

This Court
reviews a summary judgment de novo to determine whether a party's right
to prevail is established as a matter of law. 
Howard v. INA County Mut. Ins. Co., 933
S.W.2d 212, 216 (Tex. App.--Dallas 1996, writ denied).  As discussed above, we hold that, in
third-party actions under the Dram Shop Act, a provider is vicariously liable
for damages caused by an intoxicated patron and because FFP did not allege that
the Duenezes were negligent, chapter 33 is not
applicable as a bar to recovery.  FFP=s first issue
is overruled.

FFP=s Cross-action
against Ruiz

FFP filed a
cross-action against Ruiz, asserting a right to contribution and seeking to
have Ruiz=s
responsibility apportioned by the trier of fact.  The Duenezes filed
a motion to sever FFP=s contribution
claim pursuant to Texas Rule of Civil Procedure 174(b), which the trial court
granted.  In its second issue, FFP now
argues that the trial court erred in granting the severance.

The severance
of claims under the Texas Rules of Civil Procedure rests within the sound
discretion of the trial court.  Liberty
Nat=l Fire Ins. Co.
v. Akin,
927 S.W.2d 627, 629 (Tex. 1996).  A trial
court properly exercises its discretion in severing claims when: (1) the
controversy involves more than one cause of action; (2) the severed claim is
one that could be asserted independently in a separate lawsuit; and (3) the
severed actions are not so interwoven with the other claims that they involve
the same facts and issues.  Id.








We do not find
that the trial court abused its discretion. 
FFP filed an action for contribution against Ruiz.  A vicariously liable party=s right of
recovery against the tortfeasor is through indemnity
rather than contribution.  St. Anthony=s Hosp., 946 S.W.2d at
178.  Therefore, FFP did not have a
contribution claim against Ruiz.[7]  An indemnity claim does not accrue until all
of the potential liabilities of the indemnitee become
fixed and certain.  Ingersoll-Rand Co.
v. Valero-Energy Corp., 997 S.W.2d 203, 210 (Tex. 1999).  The facts that entitle an indemnitee
to seek indemnification through suit come into existence when the indemnitee's liabilities become fixed and certain by judgment.  Id. 
FFP did not have an indemnity claim against Ruiz until the Duenezes= suit was
concluded and a judgment taken against FFP. 
See id.  The trial court
did not err in severing out FFP=s action for
contribution.  








FFP also argues
that it had the statutory right to have Ruiz included as a responsible third
party.  A responsible third party is
defined as a person over whom the trial court could exercise jurisdiction, who
could have been, but was not, sued by the plaintiff, and who is, or may be,
liable to the plaintiff for all of the damages claimed by the plaintiff.  Tex.
Civ. Prac. & Rem. Code Ann. ' 33.011(6)(a)
(Vernon1997).  We do not find that Ruiz
meets the definition of a responsible third party.  FFP is vicariously liable for Ruiz=s actions and
thus stands in the same position in this case as Ruiz himself.  FFP was exposed to liability for Ruiz=s actions when
it provided him with alcohol and from the time it provided Ruiz with alcohol,
it is as though Ruiz=s actions were
undertaken by FFP.  The Dram Shop Act imposes
liability upon a provider when the intoxication of the recipient of the alcohol
was the proximate cause of the damages.  Tex. Alco. Bev. Code Ann. ' 2.02
(Vernon1995).  Ruiz=s intoxicated
conduct exposed FFP to liability: for purposes of this action he was not a
third party because his actions, and liability for those actions, are imputed
to FFP.

The trial court
did not err in severing FFP=s action
against Ruiz, nor did the trial court err by refusing to include Ruiz as a
responsible third party.  We overrule FFP=s second issue.

The Jury Charge








FFP=s last two
issues challenge the trial court=s charge to the
jury.  In its third issue, FFP contends
that the trial court erred by refusing to submit a question to the jury Ato determine
the drunk driver=s negligence
and percentage responsibility.@  The jury charge contains seven
questions.  Questions three through seven
ask the jury to determine the damages suffered by each of the Duenezes.  The first
two questions track the language of the Dram Shop Act.[8]  As a general rule, when a statutory cause of
action is submitted, the charge should track the language of the statute as
closely as possible.  Borneman,
22 S.W.3d at 413 (citing Spencer v. Eagle Star Ins. Co. of Am., 876
S.W.2d 154, 157 (Tex. 1994)).  Because
FFP is vicariously liable for the injuries caused by Ruiz=s intoxication,
apportioning liability would be meaningless: FFP is liable for any percentage
of liability assigned to Ruiz, as well as any percentage assigned to FFP.  The trial court did not err in refusing to
charge the jury regarding Ruiz=s percentage of
liability.  FFP=s third issue
is overruled.

In its final
issue, FFP argues that the trial court erred by refusing to submit an
instruction on sole proximate cause.  FFP
argues that the accident occurred when Ruiz diverted his attention from the
road to reach under his seat for a compact disc and, therefore, FFP was
entitled to an instruction on sole proximate cause.  Essentially, FFP argues that testimony in the
record would support a finding that Ruiz=s
inattentiveness, rather than his intoxication, was the sole proximate cause of
the accident.  However, FFP does not
dispute that Ruiz was intoxicated, and in fact refers to Ruiz as Athe drunk
driver@ throughout its
brief.

A trial court
has considerable discretion in deciding what instructions are necessary and
proper in submitting issues to the jury. 
State Farm Lloyds v. Nicolau, 951
S.W.2d 444, 451 (Tex. 1997).  When a
trial court refuses to submit a requested instruction, the question on appeal
is whether the request was reasonably necessary to enable the jury to render a
proper verdict.  Texas Workers= Compensation
Ins. Fund v. Mandlbauer, 34 S.W.3d
909, 912 (Tex. 2000).  A proper
instruction must: (1) assist the jury; (2) accurately state the law; and (3)
find support in the pleadings and the evidence. 
Id.








FFP contends
that there was testimony that would support a finding that Ruiz=s negligence,
not his intoxication, caused the collision with the Duenezes.  FFP points to testimony by Ruiz that the
accident happened because he reached for a compact disc, which was supported by
statements by Ruiz=s passengers
that Ruiz was Afooling around
with,@ Amessing with,@ or Aplaying with@ the compact
disc player in the truck.  FFP also
refers to testimony by two police officers that driver inattention can cause
accidents.

The problem
with FFP=s argument is
that it requires a finding that an intoxicated person=s
inattentiveness is somehow separable from that intoxicated person=s general state
of intoxication.  Common sense dictates
that an intoxicated person=s every act or
omission is affected by that person=s intoxication,
and no one particular action of an intoxicated person is separate and
unaffected by the inebriation that impairs the intoxicated persons judgment and
behavior.  FFP=s proposed
instruction would have required the jury to decide if Ruiz=s reaching for
a compact disc was distinguishable and separate from other actions undertaken
in his intoxicated state.  FFP argues
that the jury could characterize some of Ruiz=s actions as a product of intoxication,
while characterizing others as merely negligent, although undertaken while Ruiz
was intoxicated.  Such a distinction
cannot be made.[9]  Ruiz=s carelessness
while looking for a compact disc is not an action separate and distinguishable
from his intoxicated conduct.  The trial
court did not err in refusing a sole proximate cause instruction in this case.  We overrule FFP=s final issue.

Conclusion








The Dram Shop
Act imposes vicarious liability upon providers who violate the Act=s
provisions.  Because the provider is
vicariously liable for the actions of the intoxicated person, chapter 33 of the
Texas Civil Practice and Remedies Code is not applicable to third-party actions
under the Dram Shop Act when there are no allegations that the plaintiff was
negligent.  Finally, a defendant is not
entitled to an instruction that would require a jury to distinguish the actions
of an intoxicated person which are produced by intoxication and those which
were merely negligent .

The judgment of
the trial court is AFFIRMED. 

 

                                                       

LINDA REYNA
YAÑEZ

Justice

 

 

Publish. 
Tex. R. App. P. 47.3.

 

Opinion delivered and filed this the

14th day of February, 2002.

 











[1]Ashley Duenez, who was nine years old at the time of the accident,
suffered a lacerated spleen and a traumatic brain injury, which has left her so
seriously impaired that she will require constant care and monitoring for the
remainder of her life.  Xavier Duenez suffered a multiple fracture of one arm and serious
head injuries that required hospitalization. 
One of the two sons received an injury which resulted in a scar across
his forehead.





[2]A
breathalyzer test given Ruiz over two hours after the accident revealed a
blood-alcohol concentration of .157.





[3]Solis
was the clerk at the Mr. Cut Rate store who sold Ruiz the twelve-pack.





[4]In 1987,
the Texas Legislature passed chapter 2 of the Alcoholic Beverage Code.  Tex.
Alco. Bev. Code Ann. '' 2.01-2.03 (Vernon 1995).  This is commonly known as the ADram
Shop Act.@  Borneman
v. Steak & Ale of Texas, Inc. 22 S.W.3d 411, 412 (Tex. 2000).

Eight
days prior to the enactment of the Dram Shop Act, the supreme court recognized
a cause of action against an alcoholic beverage licensee who serves alcoholic
beverages to a person when the licensee knows or should know that the patron is
drunk.  El Chico Corp. v. Poole,
732 S.W.2d 306, 314 (Tex. 1987).  The
Dram Shop Act specifically states that the statutory remedy available under the
Act is in lieu of any common law Awarranties or duties.@  Tex.
Alco. Bev. Code Ann. ' 2.03 (Vernon 1995).  Thus, the liability of providers for the
actions of their intoxicated customers is now governed by the Dram Shop Act,
and not common law.  Smith v. Sewell,
858 S.W.2d 350, 354 (Tex. 1993).





[5]Our
holding today does not completely preclude the application of chapter 33 in
third-party Dram Shop claims.  A claimant
in a Dram Shop case remains subject to the fifty percent bar contained in
chapter 33.  See Tex. Civ. Prac. & Rem. Code Ann. ' 33.001
(Vernon 1997).  However, that bar would
not be applicable in the instant case, because there are no claims made that
the Duenezes were negligent.  We also do not address the applicability of
chapter 33 in situations in which there are more than one provider possibly
responsible, because in the case now before us, there is only one provider
involved.





[6]We note
that the Dram Shop Act created a Asafe harbor@ for
providers.  A provider is not liable for
the actions of employees who provide alcohol to intoxicated persons if: (1) the
provider requires employees to attend a seller training program approved by the
Texas Alcoholic Beverage Commission; (2) the employee has actually attended a
training program; and (3) the provider did not encourage the employee to
violate the Dram Shop Act.  Tex. Alco. Bev. Code Ann. '
106.14(a) (Vernon Supp. 2001).  This Asafe
harbor@ is not
available to providers who themselves violate the Dram Shop Act.  See id.





[7]FFP
argues that it has a cause of action under the Dram Shop Act, pointing out that
the Dram Shop Act states that it Adoes not affect the right of any person to
bring a common law cause of action against any individual whose consumption of
an alcoholic beverage allegedly resulted in causing the person bringing the
suit to suffer personal injury or property damage.@  Tex.
Alco. Bev. Code Ann. ' 2.02(a)(Vernon 1995) (emphasis
added).  In its brief, FFP argues that it
is a person entitled to bring suit under this provision; however, there is no
evidence in the record that FFP suffered personal injury or property damage,
nor did FFP argue to the trial court that it had suffered personal injury or
property damage.  Therefore, FFP is not
entitled to bring suit against Ruiz under the Dram Shop Act.  





[8]Question
one reads: AAt the
time the alcohol was sold to Roberto Ruiz, was it apparent to the seller that
he was obviously intoxicated to the extent that he presented a clear danger to
himself and others?@ 
Question two reads: AWas Roberto Ruiz=s intoxication
a proximate cause of the collision in question?@





[9]We note
that there are no allegations that Ruiz acted in response to an intervening
factor, such as other traffic or road conditions.  We are not ruling on the question of whether
a sole proximate cause instruction would be proper where an intoxicated driver
is reacting to an external factor.