IN THE SUPREME COURT OF TEXAS













IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0381

════════════

 

F.F.P. Operating Partners,
L.P. D/B/A Mr. Cut Rate #602, Petitioner,

 

v.

 

Xavier Duenez, and Wife, Irene Duenez,
Individually and as Next Friends of Ashley Duenez,
Carlos Duenez, and Pablo Duenez, Minors, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District
of Texas

════════════════════════════════════════════════════

 

 

Argued
on March 5, 2003


 

 

Justice Owen,
joined by Justice Hecht, Justice Wainwright and Justice Brister, dissenting.

 

 

While the Court=s
determination that a provider of alcohol should be vicariously liable for a
patron=s
intoxication may express sound public policy, I am constrained to conclude that
it does not correctly apply the Legislature=s
statutory proportionate responsibility scheme and reads more into the Dram Shop
Act than the words chosen by the Legislature can bear.  First, although the Court says proportionate
responsibility[1]
applies to causes of action under the Dram Shop Act,[2]
that is not the Court=s
actual holding.  Instead, the Court holds
that the most substantive parts of proportionate responsibility C liability commensurate with the
percentage of responsibility found by the trier of
fact C do not
apply.[3]  A provider of alcohol is liable to a claimant
for 100 percent of the damages regardless of the percentage of responsibility
assigned by a jury.  In the Court=s view, the sole function of the
proportionate responsibility statutes is to determine the amount for which an
alcohol provider may seek indemnity from an intoxicated patron. 

Second, in 1993, this Court held unequivocally in Smith
v. Sewell that A[a]pplication of the principles of comparative responsibility
to causes of action brought under [the Dram Shop Act] establishes a consistent
and equitable approach to the issue of >dramshop liability=
generally, and first party >dramshop liability=
specifically.@[4]  We made it very clear that an alcohol
provider=s
liability under the Dram Shop Act was for its own conduct, not that of its
intoxicated patron:  Aliability under [the Dram Shop Act] is
premised on the conduct of the provider of the alcoholic beveragesCnot the conduct of the recipient or a
third party.@[5]  Today, the Court overrules this holding, even
though it purports to rely upon it, saying the Dram Shop Act Aimposes liability on providers >for the actions of their customers,=@
and that a provider=s
liability is thus vicarious (although only partially vicarious, rather
than Apurely
vicarious@) for the
actions of its patron.[6]  Sewell held there was no vicarious
liability at all, only comparative responsibility.[7]  The Court=s
decision today is in direct conflict with our holding in Smith v. Sewell.  

Third, in the eleven years since Sewell was
decided, the Legislature has amended the Dram Shop Act and has extensively
amended the proportionate responsibility statutes, but it has never excluded a
cause of action against a provider of alcohol from comparative or proportionate
responsibility.  We must presume that the
Legislature knew of our holding in Sewell and that by subsequently
re-enacting the Proportionate Responsibility Act and the Dram Shop Act, it
accepted this Court=s
construction of those statutes.[8]

Fourth, the Legislature has, at differing times,
specifically included and excluded certain torts from all or parts of the
proportionate responsibility scheme.[9]  For example, the Legislature created a strict
liability cause of action against manufacturers of methamphetamine and took
great pains to say that these manufacturers=
liability is not limited by proportionate responsibility.[10]  Instead, a manufacturer of methamphetamine is
Ajointly liable with any other defendant
for the entire amount of damages arising from the manufacture.@[11]  There is no comparable treatment of providers
of alcohol in either the Dram Shop Act or the Proportionate Responsibility Act.

In light of the express provisions of the Dram
Shop Act and the Proportionate Responsibility Act, and our decision in Sewell
authoritatively construing them,[12]
I simply cannot agree with the Court that the only purpose the Legislature=s proportionate responsibility scheme
serves is to determine an alcohol provider=s
indemnity rights against an intoxicated patron. 
I respectfully dissent.

I

When construing statutes, we, of course, begin
with the statutes themselves.  The Dram
Shop Act provides:

'
2.02. Causes of Action

 

(a) This chapter does not affect the right of
any person to bring a common law cause of action against any individual whose
consumption of an alcoholic beverage allegedly resulted in causing the person
bringing the suit to suffer personal injury or property damage.

 

(b)
Providing, selling, or serving an alcoholic beverage may be made the basis of a
statutory cause of action under this chapter and may be made the basis of a
revocation proceeding under Section 6.01(b) of this code upon proof that:

 

(1)
at the time the provision occurred it was apparent to the provider that the
individual being sold, served, or provided with an alcoholic beverage was
obviously intoxicated to the extent that he presented a clear danger to himself
and others; and

 

(2)
the intoxication of the recipient of the alcoholic beverage was a proximate
cause of the damages suffered.[13]

 

'
2.03. Exclusivity of Statutory Remedy

 

(a) The liability of providers under this chapter
for the actions of their employees, customers, members, or guests who are or
become intoxicated is in lieu of common law or other statutory law warranties
and duties of providers of alcoholic beverages.

 

(b)
This chapter does not impose obligations on a provider of alcoholic beverages
other than those expressly stated in this chapter. 

 

(c) This chapter provides the exclusive cause of action for
providing an alcoholic beverage to a person 18 years of age or older.[14]

The Court=s
entire rationale hinges on a single phrase in section 2.03 that says:  AThe
liability of providers under this chapter for the actions of their
employees, customers, members, or guests who are or become intoxicated is
in lieu of common law or other statutory law warranties and duties of providers
of alcoholic beverages.@[15]  This sentence means only that a cause of
action for damages caused by an intoxicated patron is the exclusive remedy
against an alcohol provider.  I do not
believe the Legislature intended the single phrase parsed by the Court to mean
that a provider of alcohol is liable for 100 percent of the damages caused by
an intoxicated patron whenever there is a finding that alcohol was provided in
contravention of the Act and injury occurred. 
Nor does the phrase on which the Court=s
entire rationale depends say that an alcohol provider has the right to
indemnity from the intoxicated patron. 
The phrase in section 2.03 cannot bear the weight the Court places on
it.  This becomes even more apparent when
the history and details of the proportionate responsibility scheme are examined
carefully.

II

The 1997 version of the proportionate
responsibility scheme applies to this case because the collision that injured
the Dueñezes occurred in July 1997.  At that time, section 33.013 of the Civil
Practice and Remedies Code provided, with certain exceptions, that a defendant
was liable only for the percentage of responsibility found by the trier of fact, unless the percentage of responsibility was
found to exceed 50 percent.[16]  In that event, a defendant was jointly and
severally liable for damages recoverable by the claimant:

'
33.013. Amount of Liability

 

(a) Except as
provided in Subsections (b) and (c), a liable defendant is liable to a claimant
only for the percentage of the damages found by the trier
of fact equal to that defendant=s
percentage of responsibility with respect to the personal injury, property
damage, death, or other harm for which the damages are allowed.

 

(b) Notwithstanding Subsection (a),
each liable defendant is, in addition to his liability under Subsection (a),
jointly and severally liable for the damages recoverable by the claimant under
Section 33.012 with respect to a cause of action if the percentage of
responsibility attributed to the defendant is greater than 50 percent.[17]

 

Section 33.003 provided
that the factfinder was to compare a defendant=s responsibility with the
responsibility of the claimant, other defendants, and any responsible third
party joined by a defendant.[18]  

This was generally the state of the
law at the time we decided Smith v. Sewell in 1993.[19]  In that case, Sewell became intoxicated at a
bar.  On his way home, he lost control of
his car and was severely injured in a one-car accident.  He sued the bar.  This Court recognized that a cause of action
against a provider of alcohol is a direct action for the wrongful conduct of
the provider.  The Court said, A[L]iability
under [the Dram Shop Act] is premised on the conduct of the provider of the
alcoholic beveragesCnot the
conduct of the recipient or a third party.@[20]  The Court said this is true Aregardless of whether the intoxicated
individual injures himself or a third party.@[21]  The Court then examined the comparative
responsibility scheme and its exclusions and concluded that a cause of action
against a provider of alcohol was Anot
excluded@ from the
Comparative Responsibility Act and, therefore, the comparative responsibility
scheme applied.[22]  The Court was very clear that the Legislature=s intent was that Aeach of the parties involved in causing
the injury@ would
have its percentage of responsibility determined:  AApplication
of the Comparative Responsibility Act to causes of action brought under [the
Dram Shop Act] requires the trier of fact to
determine the percentage of responsibility attributable to each of the
parties involved in causing the injury.@[23]

The Court spelled out the import of this statutory
construction, holding that the intoxicated person Awill
be entitled to recover damages only if his percentage of responsibility is
found to be less than or equal to 50 percent,@
and further, A[e]ven if recovery is not barred under section 33.001(a) &
(c), any damages must be reduced by a percentage equal to the intoxicated
individual=s
percentage of responsibility.@[24]  

The Court also made clear that the comparative
responsibility scheme applied when the claimant was a third party rather than
the intoxicated patron.  AApplication of the principles of
comparative responsibility to causes of action brought under [the Dram Shop
Act] establishes a consistent and equitable approach to the issue of >dramshop
liability=
generally, and first party >dramshop liability=
specifically.@[25]  

The dissent in Sewell would have held that the
Dram Shop Act did not create a cause of action for intoxicated patrons, so
there could be no first party claims.[26]  But, with regard to innocent third parties
who unmistakably had a cause of action, the dissent agreed with the Court that
the comparative responsibility provisions applied to limit a provider=s liability to an injured third party
if the provider was found less than 51 percent responsible:

 

I do agree wholeheartedly with the Court=s conclusion that the Comparative
Responsibility Act applies to [the Dram Shop Act].  Such a holding prevents an injured party from
placing all the blame on the bar owner; instead, at least part of the
responsibility will be placed on the truly culpable party in the best position
to prevent the injury, the drunk driver.[27]


 

Today, the Court concludes that the Dram Shop Act Apartially imputes causation@ to the provider.[28]  Thus, the Court says, Athe
dram shop is liable to injured third parties for both its own actions and for
its patron=s share
of responsibility.@[29]  Citing the Restatement
(Third) of Torts: Apportionment of Liability, the Court says Athe Restatement makes clear that a
party to whom liability is imputed and who is also independently liable >is responsible for the share of the
verdict assigned to [the party whose liability is imputed] and is also
responsible for the share of the verdict assigned to its own negligence.=@[30]

There are numerous problems with this
analysis.  First, the Restatement (Third) of Torts: Apportionment of
Liability is not the law in Texas. 
The Proportionate Responsibility Act and the Dram Shop Act are.  Those statutory provisions govern this case,
not the Restatement.  Were this Court the
Legislature, it could amend the Proportionate Responsibility Act, the Dram Shop
Act, or both, to effectuate its notion of the fairest way to deal with an
alcohol provider=s
liability, and the approach the Court has chosen might be an acceptable,
perhaps even preferable, public policy. 
But we are not the Legislature, and we have to give effect to what it
has written.  The Court=s imposition of vicarious liability
conflicts with the Proportionate Responsibility Act.  The Court says that the Legislature Adid not intend for an innocent third
party to bear the risk of an intoxicated patron=s
insolvency when a provider has breached the duty that the Act imposes.@[31]  But the Legislature did intend for an
innocent third party to bear the risk of a joint tortfeasor=s insolvency as a general
proposition.  A tortfeasor
who is found less than 51 percent responsible does not have to pay the entire
amount of damages, only its proportionate share.[32]  There are exceptions for certain torts, but
claims against providers of alcohol are not among those exceptions.  Whether an innocent third party should bear
the risk that one of several joint tortfeasors is
insolvent has been the subject of longstanding debate in American
jurisprudence.  But the Texas Legislature
made hard choices and charted a course that this Court must uphold.

The Legislature has said who is not
entitled to proportionate responsibility, so that the risk of insolvency when
there is more than one tortfeasor does not fall on an
innocent third party.  But alcohol
providers are not among those enumerated. 
For example, the Legislature created a strict liability cause of action
against a person who manufactures methamphetamine for death, personal injury,
or property damage arising from the manufacture of that drug.[33]  The Legislature also created strict liability
for any exposure by an individual to the manufacturing process, including
exposure to the methamphetamine itself or any of the byproducts or waste
products incident to the manufacture.[34]  The Legislature has declared that a person
who manufactures methamphetamine and is found liable for any amount of damages
arising from the manufacture is jointly liable with any other defendant for the
entire amount of damages arising from the manufacture.[35]  The Legislature specifically said in both the
statute that created the cause of action against such manufacturers and in
amendments to the Proportionate Responsibility Act that the proportionate
responsibility scheme Adoes
not apply in an action for damages arising from the manufacture of
methamphetamine.@[36]  The Legislature did not include a similar
exclusion for alcohol providers in either the Proportionate Responsibility Act
or the Dram Shop Act, which creates the exclusive cause of action against an
alcohol provider.

At the time of the Dueñezes= injuries, the proportionate
responsibility scheme imposed joint and several liability on those who caused
toxic tort injuries and those who released hazardous substances into the
environment if their responsibility was equal to or greater than 15 percent.[37]  Thus, in such cases, liability was not
limited by proportionate responsibility. 
In 2003, the Legislature revisited that exclusion and repealed it in its
entirety.[38]  Now, defendants found liable for these tortious acts are subject to the general proportionate
responsibility scheme.  If they are less
than 51 percent responsible, they are liable only for the percentage assessed
by the factfinder.[39]


The Legislature has carved out exceptions for a
host of criminal acts, declaring that there should be joint and several
liability instead of proportionate responsibility, but only if there was
specific intent to do harm to others and the defendant acted in concert with
another.[40]  The list of crimes is numerous and broad in
scope, ranging from capital murder to fraudulent destruction of a writing, and
also includes theft when Athe
punishment level . . . is a felony of the third degree or higher.@[41]  

When the Legislature has chosen to impose joint
and several liability rather than proportionate liability, it has clearly said
so.  The Legislature has not clearly said
that alcohol providers are jointly and severally liable instead of
proportionately liable.  That fact has
not deterred the Court in the least. 
Even though Avicarious@ liability or Ajoint
and several@
liability are terms never used by the Legislature in setting forth the parameters
of a cause of action against a provider of alcohol, the Court nevertheless
imposes vicarious and joint and several liability.  

If, as the Court says, a provider of alcohol is
vicariously liable for its patron=s
share of responsibility, then when a jury finds that a patron was 15 percent
responsible for his or her own injuries, the provider of alcohol is still
liable to the patron for that 15 percent together with the percentage of
responsibility assigned to the provider. 
That means that what this Court said in Smith v. Sewell was
wrong.  The Court held in Smith v.
Sewell that the comparative responsibility scheme required a direct
comparison and apportionment of responsibility.[42]  The provider was not required to pay the
patron all of his damages and then seek indemnity with the hope that the
intoxicated patron=s other
creditors would not have higher priority claims to the damages awarded.

If, as the Court says, a provider of alcohol is
vicariously liable for its patron=s
share of responsibility, then it does not matter if a jury finds an intoxicated
patron was 60 percent responsible for his or her own injuries.  Since liability is vicarious, the provider is
liable for all the damages caused by the patron=s
conduct, and section 33.001, which says a claimant may not recover if his
percentage of responsibility is greater than 50 percent, does not apply.[43]  The Dram Shop Act makes no distinction
between claims by drunk patrons and those injured by drunk patrons.  A provider of alcohol is equally liable to
both.  There is liability if Ait was apparent to the provider that
the individual being sold, served, or provided with an alcoholic beverage was
obviously intoxicated to the extent that he presented a clear danger to himself
and others.@[44]  If the limitations of liability in section
33.013 of the Proportionate Responsibility Act limiting a defendant=s liability to the percentage of
responsibility assigned to it do not apply, as the Court says, then the same
type of limitations applicable to a claimant in section 33.012, which requires
that the claimant=s damages
be reduced by the claimant=s
percentage of responsibility,[45]
do not apply.  There is no basis for
construing the two sections differently.

If, as the Court says, a provider of alcohol is
vicariously liable for its patron=s
share of responsibility, then multiple providers of alcohol found responsible
are all jointly and severally liable, without regard to section 33.013, which
limits liability to Athe
percentage of the damages found by the trier of fact
equal to that defendant=s
percentage of responsibility.@[46]  For example, suppose that Joe Doe became
obviously intoxicated at his home, then went to three different bars.  He bought an alcoholic drink at the first,
but consumed none of it.  At each of the
other two establishments, he bought and consumed a beer.  He then injured an innocent third party while
driving home.  A jury found Joe 75
percent responsible, the first establishment he visited 5 percent responsible,
and each of the other two providers 10 percent responsible.  The first provider is jointly and severally
liable for 80 percent of Joe=s
damages even though the jury apportioned its responsibility at 5 percent.  The Court says it is giving effect to the
statutory proportionate responsibility scheme.[47]  But liability for 80 percent of the damages
when a jury has found 5 percent responsibility is not the Legislature=s proportionate responsibility
scheme.  It is the Court=s.

It bears repeating that the only statutory
language the Court can find that supports its conclusion that the proportionate
liability provisions of the Proportionate Responsibility Act do not
apply is a phrase in a sentence in section 2.03 of the Alcoholic Beverage Code
that says, AThe liability
of providers under this chapter for the actions of their employees, customers,
members, or guests who are or become intoxicated is in lieu of common law
or other statutory law warranties and duties of providers of alcoholic
beverages.@[48]  I simply cannot discern all the consequences
the Court ascribes to this phrase.

The Court=s
opinion today overturns Smith v. Sewell sub silento
by effectively holding that in cases in which the policy underlying the
proportionate responsibility scheme is the most compelling B when the intoxicated person injures
him- or herself and sues the provider, the provider must pay 100 percent of the
patron=s
damages, then seek to Arecover@ from that patron, who may well be
insolvent.  Under the Court=s analysis, the risk of the intoxicated
patron=s
insolvency must be borne exclusively by the alcohol provider.  That directly contravenes our holding in Smith
v. Sewell.

III

In Smith v. Sewell, the Court unequivocally
held that the comparative responsibility scheme applied to all Dram Shop Act
causes of action.[49]  Part of the reasoning that led to that
holding was that the Legislature had set forth exclusions or exceptions to the
comparative responsibility statute and the Dram Shop Act was not among them.[50]  Since the decision in Smith v. Sewell,
the Legislature has revisited the exclusions to its comparative, and later
proportionate, responsibility scheme, more than once.  It still has not included the Dram Shop Act
among those exclusions.  This signifies
legislative acceptance of this Court=s
interpretation of the Dram Shop Act and the Comparative Responsibility Act in Smith
v. Sewell.  

In Wich v. Fleming,
this Court held A>[T]he Legislature must be regarded
as intending statutes, when repeatedly reenacted, as in the case here, to be
given that interpretation which has been settled by the courts.=@[51]  We also held in Coastal Industrial Water
Authority v. Trinity Portland Cement Division, General Portland Cement Co.:

 

[T]he fact that the amended statute carries
forward the same language considered by [a] court indicates a legislative
adoption of the construction theretofore given said statute.  The rule is well settled that when a statute
is re‑enacted without material change, it is presumed that the
legislature knew and adopted the interpretation placed on the original act and
intended the new enactment to receive the same construction.[52]

 

Given the many instances in which the Legislature
has (1) expressly said that certain causes of action are excluded from the
Proportionate Responsibility Act, which would otherwise limit liability
commensurate with proportionate responsibility, and (2) has expressly
tailored special joint and several liability provisions for some causes of
action, the phrase in section 2.03 cannot reasonably be read to require
vicarious liability and joint and several liability in lieu of proportionate
liability for alcohol providers.

* * * * *

I
respectfully dissent.

 

______________________________

Priscilla R. Owen

Justice

 

 

OPINION DELIVERED: September 3, 2004

 











[1] Tex. Civ. Prac. & Rem. Code '' 33.001-.017. 
This case is governed by the law in effect in July 1997.  There have been amendments to both the
Proportionate Responsibility Act and the Dram Shop Act since then.  Because those revisions do not impact this
case and for ease of reference, quotations are from and citations are to the
current versions of these Codes, unless otherwise indicated.





[2] Tex. Alco. Bev. Code '' 2.01-.03.





[3] ___ S.W.3d at ___ (concluding that a provider of
alcohol Ais liable to injured third parties for both its own
actions and for its patron=s share of responsibility@ without regard to the percentages of responsibility
assigned by the factfinder).





[4] 858 S.W.2d 350, 356 (Tex. 1993).





[5] Id. at 355.





[6] __ S.W.3d at __.





[7] Sewell said:

 

A provider of alcoholic beverages is under a statutory
duty to refrain from providing alcohol to an individual when it is apparent to
the provider that the individual is obviously intoxicated to the extent that he
presents a clear danger to himself and others. 

 

. . . . 

 

However, liability under [the Dram Shop Act] is
premised on the conduct of the provider of the alcoholic beveragesCnot the conduct of the recipient or a third party.

 

858 S.W.2d at 354-55.





[8] See Wich v. Fleming,
652 S.W.2d 353, 355 (Tex. 1983) (quoting Marmon
v. Mustang Aviation, Inc., 430 S.W.2d 182, 187 (Tex. 1968) (quoting Cunningham
v. Cunningham, 40 S.W.2d 46, 50 (Tex. 1931))); Coastal Indus. Water
Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co., 563 S.W.2d
916, 918 (Tex. 1978).





[9] See, e.g., Tex. Civ. Prac. & Rem. Code '' 33.002(c), .013(b).





[10] Id. '' 33.002(c)(3)
(AThis chapter does not apply
to . . . a cause of action for damages arising from the
manufacture of methamphetamine as described by Chapter 99.@), 99.002 (strict liability for damages arising from
methamphetamine manufacture), .004 (providing that a methamphetamine
manufacturer is Ajointly liable with any other defendant for the entire
amount of damages arising from the manufacture@), .005
(AChapter 33 does not apply in an action for damages
arising from the manufacture of methamphetamine.@).





[11] Id. ' 99.004.





[12] When Sewell was decided in 1993, Chapter 33 of
the Texas Civil Practice and Remedies Code was called the AComparative Responsibility Act.@  The Act has
since been amended several times and is now the AProportionate
Responsibility Act,@ but the amendments do not alter the analysis of the
issues raised in this case.  See
Act of May 17, 1985, 69th Leg., R.S., ch. 959, ' 1, 1985 Tex. Gen. Laws 3242, 3271, amended by Act
of June 3, 1987, 70th Leg., 1st C.S., ch. 2, '' 2.04-.11B, 1987 Tex. Gen. Laws 37, 40-44, amended
by Act of May 29, 1989, 71st Leg., R.S., ch. 380, ' 4, 1989 Tex. Gen. Laws 1490, 1492, amended by
Act of May 8, 1995, 74th Leg., R.S., ch. 136, ' 1, 1995 Tex. Gen. Laws 971, 971-75, amended
by Act of May 19, 1995, 74th Leg., R.S., ch. 414, ' 17, 1995 Tex. Gen. Laws 2988, 3003, amended
by Act of May 21, 2001, 77th Leg., R.S., ch. 643, ' 2, 2001 Tex. Gen. Laws 1208, 1208-09, amended by
Act of June 2, 2003, 78th Leg., ch. 204, '' 4.01-.12, 2003 Tex. Gen. Laws 847, 855-59
(current version at Tex. Civ. Prac. & Rem. Code '' 33.001-.017).





[13] Tex. Alco. Bev. Code ' 2.02.





[14] Id. ' 2.03.





[15] Id. (emphasis added).





[16] Act of May 17, 1985, 69th Leg., R.S., ch. 959, ' 1, 1985 Tex. Gen. Law 3242, 3271, amended by Act
of June 3, 1987, 70th Leg., 1st C.S., ch. 2, ' 2.09, 1987 Tex. Gen. Laws 37, 42, amended by Act
of May 8, 1995, 74th Leg., R.S., ch. 136, ' 1, 1995 Tex. Gen. Laws 971, 974 (former Tex. Civ. Prac. & Rem. Code ' 33.013(a), (b)), amended by Act of June 2,
 2003, 78th Leg., R.S., ch. 204, '' 4.07, 4.10(5), 2003 Tex. Gen. Laws 847, 858-59.





[17] Id.





[18] Tex. Civ. Prac. & Rem. Code ' 33.003.





[19] 858 S.W.2d 350 (Tex. 1993) (construing the Dram Shop Act and the
Comparative Responsibility Act); see also supra note 12.





[20] Sewell, 858 S.W.2d at 355.





[21] Id.





[22] Id. at 356.





[23] Id. (emphasis added).





[24] Id.





[25] Id.





[26] Id. (Gonzalez, J., dissenting).





[27] Id. at 359 n.6.





[28] __ S.W.3d at __.





[29] Id. at __.





[30] Id. at __ (alteration in original) (citing Restatement (Third) of Torts: Apportionment of
LIABILITY ' 7 cmt. j (2000)).





[31] Id. at __.





[32] Tex. Civ. Prac. & Rem. Code ' 33.013(a), (b)(1).





[33] Id. ' 99.002.





[34] Id. ' 99.003.





[35] Id. ' 99.004.





[36] Id. ' 99.005;
see also id. ' 33.002(c)(3).





[37] Act of June 3, 1987, 70th Leg., 1st C.S., ch.
2, ' 2.09, 1987 Tex. Gen. Laws 37, 42, amended by
Act of May 8, 1995, 74th Leg., R.S., ch. 136, ' 1, 1995 Tex. Gen. Laws 971, 974 (former Tex. Civ. Prac. & Rem. Code ' 33.013(c)), repealed by Act of June 2,
 2003, 78th Leg., R.S., ch. 204, ' 4.10(5), 2003 Tex. Gen. Laws 847, 859.





[38] Act of June 3, 1987, 70th Leg., 1st C.S., ch.
2, ' 2.09, 1987 Tex. Gen. Laws 37, 42, amended by Act
of May 8, 1995, 74th Leg., R.S., ch. 136, ' 1, 1995 Tex. Gen. Laws 971, 974 (former Tex. Civ. Prac. & Rem. Code ' 33.013(c)), repealed by Act of June 2,
 2003, 78th Leg., R.S., ch. 204, ' 4.10(5), 2003 Tex. Gen. Laws 847, 859.





[39] Tex. Civ. Prac. & Rem. Code ' 33.013(a), (b)(1).





[40] Id. ' 33.013(b)(2).  In 2003, the Legislature moved the list of criminal
acts from section 33.002(b) to 33.013(b)(2). 
See Act of June 2, 2003, 78th Leg., R.S., ch. 204, '' 4.01, 4.07, 4.10(1), 2003 Tex. Gen. Laws 847,
855, 858-59.  Section 33.013(b) currently
provides:

 

(b) Notwithstanding Subsection (a), each liable defendant
is, in addition to his liability under Subsection (a), jointly and severally
liable for the damages recoverable by the claimant under Section 33.012 with
respect to a cause of action if:

 

(1) the percentage of responsibility attributed to the
defendant with respect to a cause of action is greater than 50 percent; or

 

(2) the defendant, with the specific intent to do harm
to others, acted in concert with another person to engage in the conduct
described in the following provisions of the Penal Code and in so doing
proximately caused the damages legally recoverable by the claimant:

(A) Section 19.02 (murder);

(B) Section 19.03 (capital murder);

(C) Section 20.04 (aggravated kidnapping);

(D) Section 22.02 (aggravated assault);

(E) Section 22.011 (sexual assault);

(F) Section 22.021 (aggravated sexual assault);

(G) Section 22.04 (injury to a child, elderly
individual, or disabled individual);

(H) Section 32.21 (forgery);

(I) Section 32.43 (commercial bribery);

(J) Section 32.45 (misapplication of fiduciary
property or property of financial institution);

(K) Section 32.46 (securing execution of document by
deception);

(L) Section 32.47 (fraudulent destruction, removal, or
concealment of writing); or

(M) conduct described in Chapter 31 the punishment level for which is a
felony of the third degree or higher.





[41] Tex. Civ. Prac. & Rem. Code ' 33.013(b)(2); see also Tex. Penal Code '' 31.01-.15.





[42] 858 S.W.2d 350, 356 (Tex. 1993).





[43] Tex. Civ. Prac. & Rem. Code ' 33.001.





[44] Tex. Alco. Bev. Code ' 2.02 (emphasis added).





[45] Tex. Civ. Prac. & Rem. Code ' 33.012 (AIf the
claimant is not barred under section 33.001, the court shall reduce the amount
of damages to be recovered by the claimant with respect to a cause of action by
a percentage equal to the claimant=s
percentage of responsibility.@).





[46] Id. ' 33.013(a).





[47] ___ S.W.3d at ___.





[48] Tex. Alco. Bev. Code ' 2.03 (emphasis added).





[49] Smith v. Sewell, 858 S.W.3d 350, 355-56 (Tex. 1993).





[50] Id.





[51] 652 S.W.2d 353, 355 (Tex. 1983) (quoting Marmon v. Mustang Aviation, Inc., 430 S.W.2d
182, 187 (Tex. 1968) (quoting Cunningham v. Cunningham, 40 S.W.2d 46, 50
(Tex. 1931))).





[52] 563 S.W.2d 916, 918 (Tex. 1978).